# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKHAIL LEBEDEV,<br><br>      Petitioner,<br><br>   v.<br><br>WARDEN OF THE GOLDEN STATE<br>ANNEX DETENTION FACILITY, et al.,<br><br>      Respondents. | Case No. 1:25-cv-01391-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO<br>GRANT AMENDED PETITION FOR WRIT<br>OF HABEAS CORPUS, DENY<br>PETITIONER'S MOTION FOR<br>TEMPORARY RESTRAINING ORDER AS<br>MOOT, AND DIRECT RESPONDENTS TO<br>PROVIDE PETITIONER WITH BOND<br>HEARING BEFORE IMMIGRATION<br>JUDGE<br><br>(ECF Nos. 11, 19) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Russia who is married to a U.S. citizen, with whom he has a seven-year-old U.S. citizen son. (ECF No. 19 at 6; ECF No. 19-1.[1]) Petitioner entered the United States via the CBP One App[2] on January 24, 2024. After Petitioner entered using an appointment he made on the app, Respondents detained Petitioner and eventually transferred him to the Golden State Annex, where he remains detained today. (ECF No. 19 at 6.)

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

[2] CBP One was a mobile device app that previously allowed migrants to make appointments at designated ports of entry on the southern border to access the asylum process. (ECF No. 19 at 6.)

On February 14, 2024, an asylum officer issued a positive credible fear finding after Petitioner expressed fear of return to Russia. Respondents had initially put Petitioner in expedited removal proceedings. However, after the finding that Petitioner has a credible fear of persecution in Russia, his proceedings were changed to standard removal proceedings under 8 U.S.C. § 1229(a). (ECF No. 19 at 6–7; ECF No. 19-3.)

In addition to seeking asylum, Petitioner also sought to adjust his status to permanent residence through his U.S. citizen wife. His wife filed an I-130 Alien Relative Petition, and he filed a Form I-485 Application to Adjust Status.[3] (ECF No. 19 at 7.) On August 12, 2025, an immigration judge ("IJ") granted Petitioner's asylum application based on his "well-founded fear of future persecution from the Russian government on account of his Christian Baptist religion, as well as his political opinion opposing the Russian invasion of Ukraine." (ECF No. 19 at 9; ECF No. 19-2 at 5.)

On October 17, 2025, Petitioner filed a petition for writ of habeas corpus, challenging his prolonged immigration detention on procedural due process grounds. (ECF No. 1.) On December 5, 2025, Petitioner filed a motion for temporary restraining order. (ECF No. 11.) On December 7, 2025, the Court appointed counsel for Petitioner. (ECF No. 12.) On December 30, 2025, Petitioner filed an amended petition. (ECF No. 19.) Respondents have filed a response, and Petitioner has filed a reply. (ECF Nos. 20, 21.)

**II.**

**DISCUSSION**

**A.  Overview of Caselaw Regarding Immigration Detention Statutes**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-

---

[3] The amended petition alleges that "[d]espite repeated requests, Respondents refused to make Petitioner available for the required interview with USCIS on the adjustment of status application, leading to its denial for 'abandonment.'" (ECF No. 19 at 7; ECF No. 19-4.) In the order granting the asylum application, the IJ noted that the "Department decline[d] to assist [Petitioner] in attending any of the appointments that he ha[d] with USCIS" and thus, Petitioner "was foreclosed from" "an alternative method upon which to immigrate." (ECF No. 19-2 at 7.)

Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Avilez, 69 F.4th at 529 (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id. "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Id. at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Id. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at

689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[4] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins

---

[4] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

(Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[5] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is

---

[5] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

"[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed] undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond hearing before an IJ at which the government would bear the burden of proof by clear and convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

**B. Procedural Due Process**

The amended petition asserts that "[d]ue process requires Petitioner's immediate release given that it has been six months since he was granted asylum and nearly two years since he was detained," or "[a]lternatively, to justify Petitioner's continued prolonged detention, due process requires that the Respondents establish, at an individualized hearing before a neutral decisionmaker, that Petitioner's detention is warranted by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently

6

mitigate that risk." (ECF No. 19 at 22–23.) Respondents assert that "[a]s an initial matter, Petitioner fails to identify the source of his liberty interest in freedom from mandatory detention during his removal proceedings." (ECF No. 20 at 6.) Relying on Barrera-Echavarria v. Rison, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc), and DHS v. Thuraissigiam, 591 U.S. 103, 139 (2020), Respondents argue that an "alien who has not effected a legal entry, i.e., has not been admitted into the United States, is entitled only to '[w]hatever the procedure authorized by Congress is.'" (ECF No. 20 at 7 (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)).

Respondents' reliance on Thuraissigiam to argue that Petitioner has no due process rights is unavailing. "*Thuraissigiam* and its progeny are distinguishable," Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016, at *10 n.8 (E.D. Cal. Dec. 4, 2025), because "[i]n *Thuraissigiam* the Supreme Court held that a petitioner who was stopped at the border did not have any due process rights regarding admission into the United States" whereas "the pending § 2241 petition does not challenge any determination regarding [Petitioner's] admissibility into the United States, but instead involves a challenge to [his] detention pending the conclusion of [his] removal proceedings," Rosado v. Figueroa, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *15 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). See Castillo v. Wofford, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding Barrea-Echavarria and Thuraissigiam "inapposite," rejecting Respondents' reliance "on the doctrine of 'entry fiction' to argue that Petitioner is an inadmissible noncitizen who should be treated as if she has not entered the country and generally has no right to procedural due process," and "reject[ing] Respondents' argument that 'entry fiction' cases guide the analysis for cases not involving an expedited removal process").

Here, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b). However, the Ninth Circuit has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for

noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024). Further, the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Contra Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024).

Based on the foregoing, the Court finds that unreasonably prolonged mandatory detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in

prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

In the amended petition, Petitioner applies the Mathews v. Eldridge, 424 U.S. 319 (1976), and Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) tests. (ECF No. 19 at 12–19.) This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (noting Mathews factors more suited to determining whether due process requires a second bond hearing and rejecting other multi-factor tests). The Court will apply the three Lopez factors.

### 1. Total Length of Detention to Date

Petitioner has been in immigration detention since January 24, 2024—almost twenty-five months. Courts have found shorter lengths of mandatory immigration detention without a bond hearing to be unreasonable. See, e.g., Black, 103 F.4th at 137–38 (affirming district court judgment ordering bond hearing for petitioner detained seven months); Perera v. Jennings, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering individualized bond hearing for petitioner detained almost two months); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months).

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez v. Bonnar, No. 18-cv-05321-

JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (alteration in original) (quoting Muse v. Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, Petitioner has been detained for two years. Accordingly, the Court finds that the total length of detention factor weighs in favor of Petitioner.

  2. Likely Duration of Future Detention

"[A]s have nearly all the other courts to consider this issue . . . the starting point of the analysis is the length of detention—both how long the petitioner has been detained and *how long the detention is likely to last*." Gonzalez, 2019 WL 330906, at *5 (emphasis added) (collecting cases). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." German Santos, 965 F.3d at 211.

Here, DHS filed an appeal with the Board of Immigration Appeals ("BIA") on July 7, 2025, and submitted its appeal brief on November 7, 2025. Petitioner filed his appeal brief with the BIA on November 10, 2025. The BIA has not issued a decision. (ECF No. 20-1 at 4.) Petitioner asserts that the likely duration of future detention is long because "there are over 200,000 appeals pending at the Board of Immigration Appeals. There are currently only nine permanent members of the BIA, down from twenty-six at the beginning of 2025" and "[s]hould Respondents lose their appeal to the BIA, they may well seek circuit court review." (ECF No. 19 at 18.)

Although future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 212 (finding appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

///

### 3.    Delays in Removal Proceedings Caused by Petitioner and Government

On February 19, 2024, DHS issued a Notice to Appear with the immigration court, placing Petitioner in immigration court proceedings. Petitioner appeared in immigration court on March 13, 2024, April 10, 2024, May 8, 2024, and June 3, 2024, each time requesting a continuance to either seek counsel or for attorney preparation time. On June 2, 2024, Petitioner filed an application for relief from removal. (ECF No. 20-1 at 2.)

On July 29, 2024, Petitioner moved the immigration court to dismiss his removal proceedings in order to apply for resident status through a petition from his U.S. citizen wife. On August 5, 2024, an IJ denied Petitioner's motion to dismiss. On August 31, 2024, Petitioner again filed a motion to dismiss his removal proceedings. On September 6, 2024, DHS opposed this motion. On September 9, 2024, an IJ denied this second motion to dismiss. (ECF No. 20-1 at 3.)

Petitioner appeared in immigration court on July 8, 2024, August 7, 2024, September 9, 2024, and October 2, 2024, obtaining additional continuances for the United States Citizenship and Immigration Services ("USCIS") adjudication of a Form I-130 visa petition, briefing on Petitioner's eligibility for the pending application for relief from removal, and to schedule his final hearing in immigration court. (ECF No. 20-1 at 3.)

On October 10, 2024, Petitioner filed an interlocutory appeal of the IJ's decision denying Petitioner's second motion to dismiss. On October 31, 2024, the BIA denied Petitioner's interlocutory appeal. (ECF No. 20-1 at 3.)

On December 20, 2024, an immigration court hearing on Petitioner's application for relief was conducted. Petitioner's case was continued for further testimony. On February 18, 2025, Petitioner's case was continued once again due to the illness of Petitioner's attorney. (ECF No. 20-1 at 3.)

On March 28, 2025, Petitioner again filed a third motion to dismiss proceedings. On April 7, 2025, DHS opposed this motion. On April 14, 2025, an IJ denied Petitioner's third motion to dismiss. (ECF No. 20-1 at 3.)

///

11

On May 5, 2025, Petitioner's case was reset due to the reassignment of his case to another IJ. (ECF No. 20-1 at 3.) On June 10, 2025, an IJ granted Petitioner's application for relief from removal. DHS filed an appeal with the BIA on July 7, 2025, and submitted its appeal brief on November 7, 2025. Petitioner filed his appeal brief with the BIA on November 10, 2025. The BIA has not issued a decision. (ECF No. 20-1 at 4.)

"[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition." Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). See Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable."); Gonzalez, 2019 WL 330906, at *4 ("The government cites no authority for the proposition that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim and the Court is unaware of any."). Here, Petitioner raised a legitimate defense to removal, as evidenced by the fact that the IJ granted Petitioner's application for asylum.

Further, "the fact that Petitioner chose to pursue the Form I-130 and requested continuances to further that application does not deprive him of a constitutional right to due process." Henriquez, 2022 WL 2132919, at *5. Although Petitioner requested multiple continues to allow adjudication of the Form I-130, the Court also recognizes that part of the delay is attributable to the time it takes USCIS to process the Form I-130. Additionally, some continuances were caused by the immigration court and the illness of Petitioner's attorney, and the government has appealed the IJ's grant of asylum and thus is the current cause of a delay of eight months and counting. See Sajous, 2018 WL 2357266, at *11 ("[T]he operative question should be whether the alien has been the cause of delayed immigration proceedings and, where the fault is attributable to some entity other than the alien, the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable."). Accordingly, the Court finds that the delay factor is neutral.

4.   Weighing the Factors

The Court appreciates that the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger. However, the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain [Petitioner] *without a bond hearing*." Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (emphasis added), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). See Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Both the length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118,[6] and the likely duration of future detention weigh in favor of finding continued detention unreasonable. The delay factor is neutral. Accordingly, the Court finds that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided a bond hearing.

**C.  Remedy**

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. The Court further finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez

---

[6] Accord German Santos, 965 F.3d at 211 ("The most important factor is the duration of detention.")

is a danger to the community" with respect to a bond hearing ordered pursuant to the Due Process Clause); Black, 103 F.4th at 159 (affirming district court's order "requir[ing] the government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); German Santos, 965 F.3d at 214 (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"); Juarez, 2021 WL 2323436, at *8 (requiring bond hearing to comport with requirements of Singh); Banda, 385 F. Supp. 3d at 1120–21 (same); Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (same); Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *11 (W.D. Wash. May 23, 2019) (same and collecting cases), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ('IJ'), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

**III.**

**RECOMMENDATIONS**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The amended petition for writ of habeas corpus (ECF No. 19) be GRANTED.

2. Petitioner's motion for temporary restraining order (ECF No. 11) be DENIED as moot.[7]

3. Respondents be ordered to provide Petitioner with an individualized bond hearing before an immigration judge within fourteen (14) days that complies with the requirements set

---

[7] The motion for temporary restraining order was filed by Petitioner before counsel was appointed. (ECF No. 11.) After appointment of counsel, the motion for temporary restraining order was not renewed and the amended petition did not raise the claims previously asserted in the motion for temporary restraining order.

forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **February 20, 2026**

STANLEY A. BOONE
United States Magistrate Judge

15